# No. 25-14305

UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

VERIBEST VESTA, LLC, *et al.*,

*Appellant,*

v.

COMMISSIONER OF THE
INTERNAL REVENUE SERVICE,

*Appellee*.

On Appeal from the Decision of
the United States Tax Court

**APPELLANT'S REPLY BRIEF**

Samuel H. Grier
Hale E. Sheppard

EVERSHEDS SUTHERLAND (US) LLP
600 Peachtree Street, N.E., Suite 5200
Atlanta, Georgia 30308
Telephone (404) 853-8000
samuelgrier@eversheds-sutherland.com
hale.sheppard@eversheds-sutherland.com

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, counsel for Veribest Vesta, LLC hereby certifies that no company or corporation has any ownership interest in Veribest Vesta, LLC. Counsel for Veribest Vesta further certifies that, to the best of our knowledge, information, and belief, the following persons and entities have an interest in the outcome of this appeal or have participated as attorneys or as judges in the adjudication of this case:

Anderson, Jerrika C., Counsel for Appellant/Petitioner, Eversheds Sutherland (US), LLP

Bartlett, Brent N., former Counsel for Appellant/Petitioner, McDermott, Will & Schulte

Bartel, John M., Counsel for Appellant/Petitioner, Eversheds Sutherland (US), LLP

Bessent, Scott, Former Acting Commissioner of Internal Revenue, Appellee/Respondent, IRS

Boning, Anna L., Counsel for Appellee/Respondent, Office of Chief Counsel, IRS

Buch, Ronald L., Judge, United States Tax Court

Cook, Larry, owner of a 2.25-percent interest in Veribest Vesta, LLC

Centrifuge Management, owner of a 0.75-percent interest in Veribest Vesta, LLC

De Mello, Andrew A., Former Acting Chief Counsel for Appellee/Respondent, Office of Chief Counsel, IRS

Faulkender, Michael, Former Acting Commissioner of Internal Revenue, Appellee/Respondent, IRS

Garcia, Luis C., Counsel for Appellee/Respondent, Office of Chief Counsel, IRS

Grier, Samuel H., Counsel for Appellant/Petitioner, Eversheds Sutherland (US), LLP

Hines, Erin R., Former Counsel for Appellant/Petitioner, Akerman, LLP

Jesse, Justin E., Former Counsel for Appellee/Respondent, Office of Chief Counsel, IRS

Kies, Kenneth J., Former Acting Chief Counsel for Appellee/Respondent, Office of Chief Counsel, IRS

Kovalskaya, Brittany S., Counsel for Appellant/Petitioner, Eversheds Sutherland (US), LLP

Krause, Melanie, Former Acting Commissioner of Internal Revenue, Appellee/Respondent, IRS

Leach, Jessica L., Counsel for Appellee/Respondent, Office of Chief Counsel, IRS

Long, Billy Former Commissioner of Internal Revenue, Appellee/Respondent, IRS

Miller, Peyton R., Counsel for Appellee/Respondent, Office of Chief Counsel, IRS

Miles, Andrew, Manager of True North Resources, LLC

Millstone Creek, LLC, owner of a 97-percent membership interest in Veribest Vesta, LLC

O'Brien, Joseph S., Counsel for Appellant/Petitioner, Eversheds Sutherland (US), LLP

O'Donnell, Doug, Former Acting Commissioner of Internal Revenue, Appellee/Respondent, IRS

Paul, William M., Former Acting Chief Counsel of Internal Revenue, Appellee/Respondent, IRS

Rembach, Olivia H., Counsel for Appellee/Respondent, Office of Chief Counsel, IRS

Rodriquez, Emily A., Counsel for Appellee/Respondent, Office of Chief Counsel, IRS

Rollinson, Marjorie A., Former Chief Counsel for Appellee/Respondent, Office of Chief Counsel, IRS

Shapley, Gary, Former Acting Commissioner of Internal Revenue, Appellee/Respondent

Shelman, Stephen Hunter, Counsel for Appellant/Petitioner, Eversheds Sutherland (US), LLP

Sheppard, Hale E., Counsel for Appellant/Petitioner, Eversheds Sutherland (US), LLP

Tyson, Kimberly B., Former Counsel for Appellee/Respondent, Office of Chief Counsel, IRS

True North Resources, LLC, Partnership Representative, and owner of a 5-percent membership interest in Veribest Vesta, LLC

Van Staden, Phillip, Manager of True North Resources

Van Staden, Pieter, Manager and Designated Individual of True North Resources, LLC

Veribest Vesta, LLC, Appellant/Petitioner

Werfel, Daniel I., Former Commissioner of Internal Revenue, Appellee/Respondent, IRS

## TABLE OF CONTENTS

**Page**

INTRODUCTION ........................................................................................ 1

I. THE TAX COURT COMMITTED REVERSIBLE LEGAL ERROR BY FAILING TO MAKE AN HBU DETERMINATION ................................ 2

A. The HBU Determination is a Mandatory Legal Requirement for Valuation ......................................................................................4

B. A Finding of "Unclear" is Legal Error, not a Factual Determination...5

C. The Dissent in *Evans* Highlights the Tax Court's Error ......................7

D. *Malibu Valley Land* Confirms the Mandatory Nature of the HBU Determination ......................................................................................8

E. The Income Method is Not a Prohibited Valuation Methodology .......9

F. Selection of Valuation Method while Failing to Establish HBU is, In Itself, Legal Error ........................................................................10

II. THE TAX COURT'S FACTUAL FINDINGS ARE INDEPENDENTLY CLEARLY ERRONEOUS ........................................................ 11

A. The Record Overwhelmingly Establishes Mining as the HBU ..........11

B. The Commissioner's Expert Failed to Perform the Required Analysis, and the Tax Court Adopted It Nonetheless .......................13

C. The Tax Court Relied on Comparable Sales that Were Not Actually Comparable ........................................................................14

D. The Millstone Transaction Does Not Determine FMV......................16

E. The Tax Court Erred by Wholly Disregarding the Only Financial Analysis on the Record ......................................................................17

F. The Lack of Current Operations Does Not Prohibit the Income Approach ...........................................................................................18

G. Respondent's Attempts to Distinguish Opinions Adopting DCF Valuation Fail ....................................................................................19

H. Mr. Dye's Testimony Does Not Undermine Veribest's FMV Argument...........................................................................................20

I. The Alternative Royalty Method is Supported by the Record ...........21

III. VERIBEST MUST BE ALLOWED TO RAISE LEGAL ARGUMENTS WHERE THE TAX COURT DENIED THE OPPORTUNITY ................. 23

A. The Arguments Were Not Forfeited ................................................. 24

B. Addressing the Merits of Veribest's Legal Arguments ...................... 26

1. *Jarkesy* Requires that the Gross Valuation Misstatement Penalty be Considered by a Jury ............................................. 26

2. 26 U.S.C. 6664(c)(3) and Adequate Disclosure is a Defense to the Gross Valuation Misstatement Penalty .......................... 27

C. Penalty and Interest Accruals were Tolled during the COVID-19 Disaster Period ........................................................................ 28

CONCLUSION ........................................................................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Abdo v. Commissioner*,
162 T.C. 148, 165 (2024), *action on dec.*, 2026-01 (June 1, 2026)....................28

*Akers v. Commissioner*,
798 F.2d 894 (6th Cir. 1986)..........................................................................6

*Curtis v. Commissioner*,
623 F.2d 1047 (5th Cir. 1980)......................................................................6, 7

*Dunn v. Commissioner*,
301 F.3d 339 (5th Cir. 2002)..........................................................................2

*Durkin v. Commissioner*,
87 T.C. 1329 (1986)......................................................................................20

*ECB USA, Inc. v. Chubb Insurance Company of New Jersey*,
113 F.4th 1312 (11th Cir. 2024)....................................................................25

*Evans v. Commissioner*,
No. 24-11882, No. 24-1184 (11th Cir. Aug. 13, 2026) (Branch, J. dissenting) ..........................................................................................7

*Garcia v. Chiquita Brands International, Inc.*,
48 F.4th 1202 (11th Cir. 2022)......................................................................24

*Jackson Crossroads, LLC v. Commissioner*,
No. 25-10744, No. 25-10745, ECF No. 52-1, slip op. (11th Cir. March 25, 2026).......................................................................................9, 29

*Estate of Jelke v. Commissioner*,
507 F.3d 1317 (11th Cir. 2007)....................................................................11

*Kwong v. United States*,
179 Fed. Cl. 382, 389 (2025), No. 26-1843 (Fed. Cir. May 20, 2026) .........................................................................................................28

*Long v. Commissioner*,
772 F.3d 670 (11th Cir. 2014)....................2

*Loper Bright*, 144 S. Ct. 2244 (2024)....................27

*Malibu Valley Land, LLC v. Commissioner*,
T.C. Memo. 2026-68 (Aug. 17, 2026)....................*passim*

*Palmer Ranch Holdings Ltd. v. Commissioner*,
812 F.3d 982 (11th Cir. 2016)....................2, 3, 4, 7

*Estate of Palmer v. Commissioner*,
839 F.2d 420 (8th Cir. 1988)....................2, 10

*PBBM-Rose Hill, Ltd. v. Commissioner*,
900 F.3d 193 (5th Cir. 2018)....................4

*Pine Mountain Preserve, LLLP v. Commissioner*,
978 F.3d 1200 (11th Cir. 2020)....................4, 6

*Powers v. Commissioner*,
312 U.S. 259 (1941)....................2

*Saltzman v. Commissioner*,
131 F.3d 87 (2d Cir. 1997)....................2

*Savannah Shoals, LLC v. Commissioner*,
182 F.4th 1314 (11th Cir. 2026)....................4, 5, 13, 16

*SEC v. Jarkesy*,
603 U.S. 109 (2024)....................25, 26

*Estate of Shafer v. Commissioner*,
749 F.2d 1216 (6th Cir. 1984)....................2

*Terrene Investments Ltd. v. Commissioner*,
T.C. Memo. 2007-218....................19

*TOT Property Holdings, LLC v. Commissioner*,
1 F.4th 1354 (11th Cir. 2021)....................*passim*

*United States v. Campbell*,
26 F.4th 860 (11th Cir. 2022) (en banc)....................24, 25

*Whitney Benefits, Inc. v. United States*,
18 Cl. Ct. 394 (1989), *aff'd*, 926 F.2d 1169 (Fed. Cir. 1991) ....................19, 21

**Statutes**

26 U.S.C. 6662(d)(2)(B) ..........................................................................25, 27

26 U.S.C. 6664(c)(3)....................................................................................27

26 U.S.C. 7508A(a)(2)..................................................................................28

**Other Authorities**

26 C.F.R. § 1.170A-14(h)(3)(i) .......................................................................2

26 C.F.R. § 1.170A-14(h)(3)(ii) ....................................................................3, 4

Seventh Amendment......................................................................................23

Appraisal Institute, *The Appraisal of Real Estate* (16th ed. 2026) ..........................5

## INTRODUCTION

The arguments set forth by Respondent-Appellee (*i.e.,* the Commissioner of Internal Revenue ("Respondent")) fail for the following reasons:

(1) Respondent misstates the standard of review. The Tax Court failed to decide the property's highest and best use ("HBU"). The HBU analysis is a mandatory analytical step that the Tax Court must take. The Tax Court's failures to apply the proper analysis, take this mandatory analytical step, and even make an HBU determination are subject to de novo review.

(2) Respondent downplays the significant factual errors committed by the Tax Court in selecting the appropriate valuation method.

(3) The Tax Court denied Veribest Vesta, LLC ("Veribest") the opportunity to raise legal, non-valuation challenges in post-trial briefing. Under the circumstances, such challenges raised in Veribest's Amended Appellant's Brief are timely and are not forfeited.

The Court should reverse the Tax Court's decision, or vacate and remand the case instructing the Tax Court to (i) determine the HBU of the property using the criteria continually endorsed by this Court, the Tax Court, and the IRS, (ii) determine the fair market value ("FMV") of the conservation easement using the appropriate valuation method for the property's HBU, and (iii) allow Veribest to raise the legal, non-valuation arguments outlined in Veribest's Amended Appellant Brief.

## I. THE TAX COURT COMMITTED REVERSIBLE LEGAL ERROR BY FAILING TO MAKE AN HBU DETERMINATION

The Eleventh Circuit holds that "[a] determination of fair market value is a mixed question of fact and law: the factual premises are subject to a clearly erroneous standard while the legal conclusions are subject to de novo review." *Palmer Ranch Holdings Ltd. v. Commissioner*, 812 F.3d 982, 994 (11th Cir. 2016) (*quoting Estate of Jelke v. Commissioner*, 507 F.2d 1317, 1321 (11th Cir. 2007)); *see also TOT Property Holdings, LLC v. Commissioner*, 1 F.4th 1354, 1369 (11th Cir. 2021); *Long v. Commissioner*, 772 F.3d 670, 675 (11th Cir. 2014).

The Supreme Court and Circuit Courts of Appeal have long held that the criteria used by the Tax Court to value property is a question of law subject to de novo review. *Powers v. Commissioner*, 312 U.S. 259, 260 (1941); *see also Dunn v. Commissioner*, 301 F.3d 339, 348 (5th Cir. 2002); *Saltzman v. Commissioner*, 131 F.3d 87, 93 (2d Cir. 1997); *Estate of Palmer v. Commissioner*, 839 F.2d 420, 423 (8th Cir. 1988); *Estate of Shafer v. Commissioner*, 749 F.2d 1216, 1218 (6th Cir. 1984).

The Treasury Regulations allow two methods for valuing a conservation easement. The first is using comparable sales of easements. 26 C.F.R. § 1.170A-14(h)(3)(i). As in the case of Veribest, when comparable sales of easements are not available, the correct valuation method is the "before-and-after" method, which values an easement by calculating the difference between the FMV of a property

before and after the encumbrance. *See* 26 C.F.R. § 1.170A-14(h)(3)(ii). The parties agree that the correct valuation method is the "before-and-after" method.

Critically, when the before and after method applies (as it does here), the FMV of the property turns on its HBU. *TOT Property Holdings, LLC v. Commissioner*, 1 F.4th 1354, 1369–70 (11th Cir. 2021) (stating that "the regulations require a determination of the property's highest and best use…"); *see also Palmer Ranch Holdings, Ltd. v. Commissioner*, 812 F.3d 982, 987 (11th Cir. 2016). This means that the Tax Court must first determine the property's HBU before it can correctly determine a dollar value based on that use. *TOT Prop.*, 1 F.4th at 1369–70; *see also Palmer Ranch*, 812 F.3d at 987. The Eleventh Circuit and Treasury Regulations require the Tax Court to first make an HBU determination for good reason: It cannot select true comparable sales to value a property unless it determines a property's HBU (i.e., whether selected comparable sales are truly comparable sales).

But the Tax Court here refused to make this fundamental HBU determination and thus committed reversible legal error. Because the Tax Court failed to apply the correct legal standard to determine FMV, this Court reviews the error de novo. *Palmer Ranch*, 812 F.3d at 993–94.

### A. The HBU Determination is a Mandatory Legal Requirement for Valuation

This Court has been clear: "To determine the before value—that is, the fair market value of the property before contribution of the conservation restriction—the regulations require a determination of the property's highest and best use before donation." *TOT Property Holdings*, 1 F.4th at 1369 (citing 26 C.F.R. § 1.170A-14(h)(3)(ii)). As this Court has further held, "Parties must first determine the property's highest and best use..." *Savannah Shoals, LLC v. Commissioner*, 182 F.4th 1314, 1322 (11th Cir. 2026). Only after this mandatory first step may they "then calculate a dollar value based on that use." *Id.* This Court has repeatedly held that an HBU determination is first foundational step in conservation easement valuation. *See Palmer Ranch Holdings, Ltd. v. Commissioner*, 812 F.3d 982, 998 (11th Cir. 2016) ("[A parcel's] before value must take into account the parcel's highest and best reasonable and probable use that supports the highest present value." (quotations omitted)); *Pine Mountain Preserve, LLLP v. Commissioner*, 978 F.3d 1200, 1210 (11th Cir. 2020); *TOT Property Holdings, LLC v. Commissioner*, 1 F.4th 1354, 1365 (11th Cir. 2021). Other courts agree. *See PBBM-Rose Hill, Ltd. v. Commissioner*, 900 F.3d 193, 209 (5th Cir. 2018) ("A 'critical aspect' in calculating fair market value is determining the 'highest and best use' of the property before and

after." (quotations omitted)). Thus, it is well established as a legal matter that the HBU determination is a mandatory legal requirement.[1]

### B. A Finding of "Unclear" is Legal Error, not a Factual Determination

The Tax Court states in its Bench Opinion that "[i]t is unclear what the highest and best use of the Old Grimes quarry was before the conveyance of the easement in December 2018." Doc. 199, p. 51. Respondent characterizes the Tax Court's statement that HBU was "unclear" as a factual determination entitled to clear-error review. Yet Respondent's characterization confuses a court's factual conclusion with its failure to reach one.[2] Clear error review presupposes that the Tax Court engaged with the evidence and reached a conclusion. Where the court fails to make a required legal determination, this is not a factual error but a legal one.

---

[1] The well-established four prong HBU test commonly used by appraisers, derived from the Appraisal Institute, *The Appraisal of Real Estate* (16th ed. 2026), is outlined in Veribest's Amended Appellant Brief. This Court recently held that courts are not required to apply this strict four-pronged test in its entirety to determine HBU. *See Savannah Shoals, LLC v. Commissioner*, 182 F.4th 1314, 1322 (11th Cir. 2026). Veribest acknowledges that its Appellant's Brief, filed before *Savannah Shoals* was issued by this Court, advocates that the Tax Court is required to apply the strict four prong test. But this is a separate issue from the Court's repeated and fundamental holdings that courts must actually make an HBU determination, regardless of whether a court applies the four prong HBU in its entirety.

[2] This Court held that the factual conclusions underlying the Tax Court's HBU determination are subject to clear error review, *TOT Property Holdings, LLC v. Commissioner*, 1 F.4th 1354, 1369 (11th Cir. 2021), but that case covered different circumstances from the relief Veribest seeks here.

The Tax Court did not weigh the evidence under the controlling HBU framework and then determine whether mining was the correct HBU. Instead, it simply declined to decide HBU altogether but nonetheless proceeded to value the property, without knowing the HBU of the property. This was a failure to apply the controlling legal standard, not a mere choice between reasonable factual inferences as Respondent contends. *Pine Mountain Preserve, LLLP v. Commissioner*, 978 F.3d 1200 at 1210 (11th Cir. 2020), requires the Tax Court to apply a "discernible methodology" tied to the governing regulations, and *Curtis v. Commissioner*, 623 F.2d 1047 at 1051(5th Cir. 1980), requires findings and conclusions stated with "sufficient particularity" to permit meaningful review. The Tax Court did neither here.

The Tax Court's failure to follow the criteria it has previously established requiring an HBU determination, without explanation, warrants reversal or remand. *See Akers v. Commissioner*, 798 F.2d 894, 897 (6th Cir. 1986) ("Where the Tax Court fails to explain how it arrived at its conclusion on valuation, we have not hesitated either to send the case back or to correct the Tax Court's numbers if the ensuing explanation fails to pass muster.").

### C. The Dissent in *Evans* Highlights the Tax Court's Error

The dissent published by this Court in *Evans v. Commissioner*, No. 24-11882, No. 24-1184 (11th Cir. Aug. 13, 2026) (Branch, J. dissenting) is instructive as it directly addresses the legal standard at issue here. Although not binding, the analysis highlights that the HBU determination is a mandatory prerequisite to valuation, not a discretionary exercise. The dissent explained this Court's precedent confirming that the Tax Court *must* determine HBU before determining FMV. *See Palmer Ranch*, 812 F.3d at 987; *TOT Prop.*, 1 F.4th at 1369–70. This reasoning further confirms that a court may not select a valuation approach that assumes a different use from the one supported by the record. The dissent further explained that the Tax Court cannot sidestep its analytical obligation by simply accepting one expert's ultimate valuation. The factual record either supports a particular HBU, or it does not. Where the record supports one HBU, as it does here, the Tax Court must explain its factual basis for accepting or rejecting an HBU. Anything less fails to "express the court's findings with sufficient particularity" to permit meaningful appellate review. *Curtis v. Commissioner*, 623 F.2d 1047, 1051 (5th Cir. 1980).

The same defect occurred here. The Tax Court received evidence supporting a mining HBU, declined to resolve the HBU question, and then adopted Respondent's valuation method that ignored the substantial mineral value evidence in the record.

### D. *Malibu Valley Land* Confirms the Mandatory Nature of the HBU Determination

The Tax Court's own recent decision in a conservation easement case, *Malibu Valley Land, LLC v. Commissioner*, T.C. Memo. 2026-68 (Aug. 17, 2026), confirms that the HBU determination is mandatory. In *Malibu Valley Land*, the Tax Court conducted the four-prong analysis before selecting its valuation methodology, examining legal permissibility, physical possibility, financial feasibility, and maximum productivity. After performing the test, the Tax Court stated affirmatively "[w]e conclude that the highest and best use of the northern portion is a 22-lot large lot subdivision consistent with the VTTM. With that conclusion in mind, we turn to the valuation approaches." *Malibu* at 42. The Tax Court in *Malibu Valley Land* treated the HBU determination as a required analytical step, not an optional one. The court analyzed each standard in detail, made an affirmative determination supported by the record, and then selected a valuation methodology consistent with the HBU determination.

Respondent cannot have it both ways. If the affirmative HBU determination step is merely discretionary, as Respondent seemingly argues here, then the parties and the Tax Court in *Malibu Valley Land* wasted substantial judicial resources on an unnecessary exercise. Instead, the Tax Court in *Malibu Valley Land* correctly understood its obligation and the Tax Court in the instant case failed to meet it.

### E. The Income Method is Not a Prohibited Valuation Methodology

Once mining or development is determined to be a property's HBU, the income approach, through a discounted cash flow ("DCF") analysis or royalty method, is a legally permissible means of measuring the property's value. The appropriate method follows from the property's HBU. The Tax Court cannot choose a preferred valuation method first and then use that method to avoid deciding HBU, but that is what happened here.

The HBU determination defines the hypothetical buyer universe and determines which valuation methodology can capture the property's value. A comparable sales approach using non-mining properties ignores the mineral component of FMV and therefore cannot serve as a legally valid substitute for an income-based analysis when mining is the HBU.

This Court's decision in *Jackson Crossroads, LLC v. Commissioner*, No. 25-10744, No. 25-10745, ECF No. 52-1, slip op. at 24–25 (11th Cir. March 25, 2026), illustrates this point. There, Respondent's expert did address the potential mineral value by using an income-valuation method even for a vacant site with limited exploration and no permits. Respondent's income valuation resulted in a negative net present value, but the court recognized that entirely ignoring potential mineral value would have been a genuine methodological error. *Id.*

The Tax Court's decision in *Malibu* likewise confirms that the income method is an appropriate valuation method if supported by the HBU. In that case both sides' experts agreed that the income method was the appropriate method, and the Tax Court adopted it. In the instant case the Tax Court recites opinions where the Tax Court rejected the income method, but the Tax Court fails to highlight that in each case the HBU determination was treated as a required step before such rejection. Doc. 199, p. 60.

### F. Selection of Valuation Method while Failing to Establish HBU is, In Itself, Legal Error

The principle of substitution does not authorize comparing a mining property to land with a different HBU. Once mining is established as the HBU, sales of agricultural, recreational, or other non-mining properties are categorically inappropriate because they measure a different economic use. *Estate of Palmer v. Commissioner*, 839 F.2d 420, 424 (8th Cir. 1988) ("[The comparable sales method] has validity, however, only when the properties that provide the market benchmark have qualities substantially similar to the property for which a value is sought."). Comparable sales evidence is relevant only if it reflects similar utility and the same HBU, otherwise it cannot supply a legally valid measure of FMV. Respondent's suggestion in his brief that the comparable sales method was reasonable because the Tax Court declined to determine HBU is circular. The Tax Court could not avoid

the legal consequences of the HBU by declining to determine it. The valuation methodology must follow the HBU determination, not supply a substitute for it.

The selection of the appropriate valuation methodology following the HBU determination is a legal issue reviewed de novo. *See Estate of Jelke v. Commissioner*, 507 F.3d 1317, 1321 (11th Cir. 2007). Because the Tax Court's methodology failed to make an HBU determination and then ignored the record establishing the mineral value that mining would generate, its error is legal and warrants reversal or remand.

## II. THE TAX COURT'S FACTUAL FINDINGS ARE INDEPENDENTLY CLEARLY ERRONEOUS

Even under the deferential clear error standard, many of the Tax Court's factual findings are clearly erroneous. Its valuation rests on fundamentally flawed evidence, gives dispositive weight to owner-specific and non-comparable sales, and ignores overwhelming contrary evidence in the record, including the property's mining history, quality granite reserves confirmed through core sample testing, Heavy Industry ("HI ME") zoning, and strong market demand.

### A. The Record Overwhelmingly Establishes Mining as the HBU

The record in this case establishes mining as the HBU under both the four-prong test and the caselaw developed under the regulation. Under the four-prong analysis, there is substantial evidence in the record that the property's HBU is mining.

- *Legally Permissible.* The record confirms that there is no legal impediment to mining the property. The property was zoned for mining at the time of the donation, and dimension stone quarrying has been conducted on and around the property for over a century.
- *Physically Possible.* The core sample analysis confirmed high-quality dimension stone granite suitable for commercial extraction. The property has over 50 years of documented mining history. Respondent provided no evidence refuting the quality of the stone or physical feasibility of mining.
- *Financially Feasible.* Mr. Dye's DCF analysis, based on his years of dimension stone industry experience, demonstrated that mining would be profitable. Industry witnesses testified that demand exceeds supply ("market's through the roof," "nobody can get enough," "sold everything we mined, pretty much"). Doc. 184, p. 192; Doc. 190, p. 1520; Doc. 196, p. 702. The property is adjacent to Elberton, the "Granite Capital of the World," with established infrastructure and markets.
- *Maximally Productive.* Mining produces far greater returns than the agricultural or recreational use advocated by Respondent. Mr. Dye's analysis showed property values between $23 and $33.5 million under a mining HBU, compared to the Commissioner's valuation of $165,000 under an agricultural

use. Even considering reasonable disagreements about inputs, the income from mining substantially exceeds income from any alternative use.

Under this Court's standard illustrated in *Savannah Shoals*, the evidence overwhelmingly supports mining as the correct HBU. "The highest and best use is one that is a 'reasonable and probable use that supports the highest present value,' with a 'focus on the highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future.'" *TOT Prop.*, 1 F.4th at 1369 (quoting *Palmer Ranch*, 812 F.3d at 987); *Savannah Shoals, LLC v. Commissioner*, 182 F.4th 1314 (11th Cir. 2026). The Tax Court did not grapple with any of these standards. Instead, it declined to make an HBU determination and summarily adopted the IRS's expert's comparable sales approach based on non-mining properties.

**B. The Commissioner's Expert Failed to Perform the Required Analysis, and the Tax Court Adopted It Nonetheless**

Respondent's expert, Mr. Adamson, conceded that mining was a permissible use of the property. His report states that the property's use includes "no limitations on long term use as a rock quarry site." Doc. 62, p. 2, Ex. 5000-R; Doc. 199, pp. 34-35. Yet Mr. Adamson did not perform any financial feasibility analysis, did not consider market demand for dimension stone granite, did not account for the property's documented mining history, and did not employ any valuation methodology appropriate for mineral properties. Instead, Mr. Adamson relied

exclusively on comparable sales of properties with different zoning and different HBUs. The Tax Court's reliance on this flawed testimony was clearly erroneous.

### C. The Tax Court Relied on Comparable Sales that Were Not Actually Comparable

Mr. Adamson relied on 29 sales without knowing the HBU of any of the properties or whether each actually contained available granite. The sales therefore did not establish equivalent utility or provide a reliable basis for valuing the property's mining potential, as required.

The record identified specific defects in the sales he selected: Sale 9 had no pit and was not zoned HI-ME; Sale 12 had no pit and was not zoned HI-ME; Sale 14 had no pit and the timing of any zoning change was unknown; Sale 16 had no pit, was not zoned HI-ME, and included a double-wide mobile home and small shed in poor condition; Sale 22 involved a larger tract with no discussion of the value of minerals; and Sale 28 had no pit, was not zoned HI-ME, and included a hunting cabin and dirt racetrack. At least two sales were rezoned only after the transactions, and Adamson admitted that the public could not verify all listed sales without MLS access. Doc. 190, pp. 1416–17, 1420–21, 1427, 1449–50.

The 2016 sale likewise cannot bear the weight the Tax Court assigned it. Mr. Stevens, who sold the property through Georgia-Carolina Quarries for $100,000 (approximately $1,818 per acre), had limited quarry experience, resided in North Carolina, and lacked knowledge of the property's granite quality. The sale occurred

*before* the 162-foot core sample confirmed the granite's quality, and the transaction did not reflect bargaining over the mineral rights. Doc. 91, Ex. 32-P; Doc. 199, p. 12. These owner-specific circumstances make the sale poor evidence of what an informed quarry operator would pay for the property.

Respondent argues that because granite is plentiful throughout the Elberton area, a rational buyer would not pay a premium for the property. This argument assumes too much. If granite property were truly fungible, every quarry in Oglethorpe County and the surrounding area would command the same price-per-acre regardless of stone quality, accessibility, overburden depth, proximity to infrastructure, or proven reserves. The record demonstrates the opposite. Mr. Hill paid $8,900 per acre for a property he was already mining; Mr. Bryant paid over $30,000 per acre equivalent for a partial interest in an operating quarry; and the Briar Patch Quarry, which Mr. Cook preferred because it was "a little better" for quarrying, sold for $2,350 per acre. The principle of substitution requires comparison to properties with equivalent utility, not merely equivalent acreage in the same county. A property with confirmed dimension stone granite, HI ME zoning, and no overburden is not interchangeable with an agricultural tract merely because both contain granite somewhere beneath the surface.

### D. The Millstone Transaction Does Not Determine FMV

Respondent argues that Millstone Creek's acquisition of a 97% membership interest in Veribest for $2 million, approximately one month before the easement donation, establishes a ceiling on FMV. Resp. Br. 51. Veribest acknowledges the $2 million figure but argues that it is not indicative of the property's unencumbered fee simple value.

The Millstone transaction was a transfer of membership interests in an LLC, not a direct sale of the property's fee simple or mineral estate. The price reflects entity-level factors, including liabilities, operating agreement terms, transferability restrictions, and discount or premium adjustments, none of which establish the FMV of the underlying real property on an unencumbered fee simple basis. Respondent's own expert, Mr. Adamson, did not rely on the Millstone transaction as an appraisal comparable. The $2 million figure may be relevant, but it cannot serve as a substitute for the HBU and valuation analysis the law requires. Respondent's reliance on *TOT Property Holdings*, 1 F.4th 1354 (11th Cir. 2021), and *Savannah Shoals,* 182 F.4th 1314 (11th Cir. 2026), is misplaced. Resp. Br. 51. Those cases involved direct purchases of the underlying real property, not acquisitions of membership interests in entities holding the property as part of a multi-step contribution structure.

### E. The Tax Court Erred by Wholly Disregarding the Only Financial Analysis on the Record

Mr. Dye provided the only financial analysis in the record, which was a DCF model based on his years of dimension stone industry experience. Mr. Dye's DCF model used inputs drawn from his own experience operating Granite City Quarries in Elberton, Georgia, the very market in question. His production estimates were corroborated by industry witnesses with years of collective experience. His pricing inputs were based on actual market transactions. And his methodology, DCF, is the standard approach for valuing mineral properties.

The Tax Court in *Malibu Valley Land* applied precisely this approach, using a DCF analysis to value property whose HBU was residential development. T.C. Memo. 2026-68 (Aug. 17, 2026). This case demonstrates that where mining is determined to be the HBU, the income approach is an appropriate valuation methodology and cannot be summarily dismissed by the Tax Court.

Respondent's suggestion that Mr. Dye's DCF projections are suspect because he used similar figures in another case misconstrues how DCF modeling works. A quarry operator's production capacity, equipment costs, and labor requirements do not change from site to site. What changes is the quality and quantity of stone, the depth of overburden, and market access. Mr. Dye's use of consistent operational assumptions across properties with similar geological characteristics is not a flaw in his methodology. It reflects the standardized nature of quarry operations in the

Elberton market. Respondent cites no authority for the proposition that an expert must artificially vary operational inputs across similar properties.

### F. The Lack of Current Operations Does Not Prohibit the Income Approach

Respondent argues that the income approach is inappropriate because the property had no track record of current earnings and quarrying had ceased around 1998 or 1999. Resp. Br. 43-46; Doc. 199 at 10. This confuses operational status with mining potential. FMV is determined by what a willing buyer would pay a willing seller with reasonable knowledge of the relevant facts, not by what the property happens to be doing at the moment of valuation. A property need not be currently operating to have a mining HBU where, as here, the record shows a 162-foot core sample confirming high quality Elberton granite, HI-ME zoning permitting quarrying as of right, and multiple industry witnesses testifying to strong demand. Even the Tax Court recognized this in *Malibu Valley Land* when it adopted the income approach to determine the FMV of vacant undeveloped land, with no track record of earnings, as if it would be developed. T.C. Memo 2026-68 (Aug. 17, 2026).

Veribest acknowledges that the Tax Court found it "unclear" what the property's HBU was and "unlikely" that it was dimension stone mining, citing the late-1990s samples indicating coping or curb grade stone. Doc. 199 at 45. But the Tax Court also assumed *arguendo* that even if HBU were dimension stone mining,

"it would not change the outcome" because the before value "would not exceed $3,000 per acre." Doc. 199 at 45-46. That is the clear error. It reflects the Tax Court's categorical rejection of any income based valuation, not a factual finding that the mineral reserves lack value.

Respondent's emphasis on the absence of "past income data," Resp. Br. 45, overstates the relevance of historical income. Veribest does not contend that historical income is irrelevant in all cases. It may bear on feasibility, risk, or the appropriate discount rate. But the absence of historical income from a specific parcel does not render the income approach improper where reserves, market demand, production costs, high-quality stone test results, and projected revenue are all established by evidence in the record.

### G. Respondent's Attempts to Distinguish Opinions Adopting DCF Valuation Fail

Respondent attempts to distinguish every case in which a court relied on income analysis for mineral property. Resp. Br. 52-55. Veribest cites these authorities because they confirm that the income approach is permissible where the property's HBU is mineral extraction and comparable sales of similar mineral properties are unavailable.

*Whitney Benefits*, 18 Cl. Ct. 394 (1989), *aff'd*, 926 F.2d 1169 (Fed. Cir. 1991), and *Terrene Investments Ltd. v. Commissioner*, T.C. Memo. 2007-218, confirm that when no comparable sales of mineral properties are available, the income approach

is appropriate. That is the situation here. Respondent's own expert did not present comparable sales of mining properties. He presented sales of non-mining properties with different HBUs. The absence of genuine mining comparables is what makes an income approach necessary in this case.

Respondent's attempt to distinguish *Durkin v. Commissioner,* 87 T.C. 1329 (1986), because it involved "actual production statistics from a going concern," Resp. Br. 53, underscores Respondent's recurring error. He conflates operational status with mineral value. Whether the parcel was actively producing does not determine whether income analysis is permissible.

### H. Mr. Dye's Testimony Does Not Undermine Veribest's FMV Argument

Respondent places great weight on Mr. Dye's testimony that he would not personally pay the bottom end of his mineral valuation for the property, and that he paid approximately $500,000 ($2,500 per acre) for a different quarry he estimated to contain $20 million in mineral value. Resp. Br. 47-50. Respondent also highlights Mr. Dye's "grandmother's safe" analogy. Doc. 199 at 54. While his testimony is relevant, it does not establish FMV. An expert's personal willingness to purchase reflects his own investment preferences and risk tolerance, not the objective market.

The safe analogy illustrates the distinction between land value and enterprise value that the Tax Court correctly identified. Doc. 199 at 54. Veribest's position on appeal is not that the property's land value equals the full going concern value of a

hypothetical quarry. Rather, Veribest argues that the Tax Court erred by refusing to use any income based valuation framework to account for the difference in raw land sales and mineral value. The safe analogy supports the need for such an approach.

As for the $500,000 purchase, the Tax Court noted that the seller lacked "one of the four things needed to operate a dimensional stone mine to extract those minerals." Doc. 199 at 55. This confirms that land transactions reflect the buyer's specific capabilities, not the property's objective mineral potential. The correct response is to account for that gap through an appropriate discount, whether through a residual approach, a royalty capitalization, or a discount for entrepreneurial profit. The response cannot be to assign the mineral estate a value of effectively zero.

## I. The Alternative Royalty Method is Supported by the Record

Even setting aside Mr. Dye's full DCF analysis, the record supports valuation under a royalty approach. Industry evidence establishes uniform royalty rates for dimension stone granite in the Elberton market. The Tax Court ignored this evidence entirely. Instead, it adopted a valuation that essentially assigns zero value to the property's mineral rights.

The royalty method is well established in mineral valuation. Courts routinely rely on royalty evidence as an indicator of mineral value. *See, e.g.*, *Whitney Benefits, Inc. v. United States*, 18 Cl. Ct. 394, 426–27, 449 (1989), *aff'd*, 926 F.2d 1169 (Fed. Cir. 1991). The uniform royalty evidence in this case provides an independent basis

for concluding that the property's value vastly exceeds the $165,000 adopted by the Tax Court.

Respondent attacks Mr. Kenny's 10 percent royalty rate on three grounds: (i) Kenny relied on nonlocal and non-granite royalty data; (ii) Local data reflected a 5 percent to 10 percent range; and (iii) Royalty rates vary widely. Resp. Br. 55-56. None of these criticisms justify wholesale rejection of Veribest's royalty evidence.

First, Mr. Kenny testified to local evidence supporting a 10 percent royalty rate, including royalty arrangements in the Elberton dimension stone market. Doc. 196, pp. 681-82, 706. His consideration of national data for context reflects standard appraisal practice. Second, the 5 percent to 10 percent local range, Resp. Br. 55, actually confirms that 10 percent is within the observed local market range. The Tax Court noted that rates "vary widely, starting well below the 5% starting point suggested by Mr. Kenny." Doc. 199 at 56. That variability calls for reasoned weighing, not outright rejection. Selection of a rate within the established range is a matter of appraisal judgment, not methodological error.

Third, that royalty rates "vary widely" is true of virtually every valuation input. Even applying 5 percent, the resulting value would materially exceed both the Tax Court's $111,000 valuation and Respondent's $165,000 figure. The royalty method values the landowner's interest as the discounted revenue from leasing the

mineral rights, which is a standard measure that directly addresses the land versus business distinction.

Respondent's opposition to the royalty method seems to rest on the same flawed premise as his opposition to the DCF. Namely, that the Tax Court may decline to determine HBU and disregard mining-based evidence in the record. But the royalty evidence provides compelling support for Veribest's alternative valuation method. It is based on actual arm's-length transactions in the Elberton dimension stone market and is far more reliable than Mr. Adamson's comparable sales involving non-mining properties. Doc. 184, pp. 189, 217; Doc. 185, p. 524; Doc. 190, p. 1494; Doc. 196, pp. 681–82, 706.

This Court should reverse, or remand and instruct the Tax Court to properly consider to income approach, whether through a full DCF analysis or through the royalty method, consistent with the property's mining HBU.

## III. VERIBEST MUST BE ALLOWED TO RAISE LEGAL ARGUMENTS WHERE THE TAX COURT DENIED THE OPPORTUNITY

The Commissioner argues that Veribest's legal, non-valuation arguments raised in its Amended Appellant's Brief, including the Seventh Amendment jury trial right, the COVID-19 period interest suspension, and the adequate disclosure defense, are waived because they were not timely raised below. Resp. Br. 57-59. Respondent's contentions do not establish waiver.

### A. The Arguments Were Not Forfeited

Veribest raised these issues by filing a Motion to Amend its Petition. Doc. 116. The Tax Court denied the motion as untimely but did not hold the arguments waived on the merits. While the denial of leave to amend does not automatically preserve every legal theory, it demonstrates that Veribest pursued the arguments at the earliest available opportunity. *See Garcia v. Chiquita Brands International, Inc.*, 48 F.4th 1202, 1221 (11th Cir. 2022). Respondent conflates waiver with forfeiture. This Court distinguishes (i) forfeiture, "the failure to make the timely assertion of a right," from (ii) waiver, "the intentional relinquishment or abandonment of a known right." *United States v. Campbell*, 26 F.4th 860, 872-73 (11th Cir. 2022) (en banc) (quoting *Kontrick v. Ryan*, 540 U.S. 443, 458 n.13 (2024). There was no intentional relinquishment in this case.

Even assuming forfeiture, this Court retains discretion to reach the arguments. *Campbell*, 26 F.4th at 872-73. In *Campbell*, the Court "identified five situations in which [it] may exercise [its] discretion to consider a forfeited issue."[3] *Id.* at 873. Three of the situations are present here: (i) Veribest's penalty and interest arguments

[3] Those situations are: (i) the issue involves a pure question of law and refusal to consider it would result in a miscarriage of justice; (ii) the party lacked an opportunity to raise the issue at the district court level; (iii) the interest of substantial justice is at stake; (iv) the proper resolution is beyond any doubt; or (v) the issue presents significant questions of general impact or of great public concern. *Campbell*, 26 F.4th at 873 (quotations omitted).

raise pure legal questions; (ii) The Tax Court denied leave to amend and then issued a summary bench opinion despite indicating that Veribest could raise such issues in post-trial briefing, Doc. 199 at 3, and; (iii) The constitutionality of penalties is a question of significant public concern following *SEC v. Jarkesy*, 603 U.S. 109 (2024).

Respondent correctly notes that Veribest's motion to amend did not specifically reference adequate disclosure under 26 U.S.C. 6662(d)(2)(B). Doc. 116. But the motion challenged the penalty on multiple grounds, and adequate disclosure is a legal argument supporting the position, taken below, that the penalty should not be sustained. *See ECB USA, Inc. v. Chubb Insurance Company of New Jersey*, 113 F.4th 1312, 1320 (11th Cir. 2024) (holding that while "litigants can waive or forfeit positions or issues through their litigation conduct," they cannot waive or forfeit "authorities or arguments.").

On appeal, the Court granted leave to file Appellant's Amended Brief, which is the operative brief. Respondent responded fully to every argument. Resp. Br. 57-67. There is no prejudice to Respondent. *See ECB USA*, 113 F.4th at 1320-21; *Campbell*, 26 F.4th at 873-74.

### B. Addressing the Merits of Veribest's Legal Arguments

#### 1. *Jarkesy* Requires that the Gross Valuation Misstatement Penalty be Considered by a Jury

Respondent argues that *SEC v. Jarkesy*, 603 U.S. 109 (2024) does not entitle Veribest to a jury trial on the gross valuation misstatement penalty. Resp. Br. 60-64. These arguments are addressed in Veribest's opening brief, Appellant's Br. 51-56. However, certain contentions warrant reply.

First, the fact that Veribest petitioned the Tax Court does not eliminate the Seventh Amendment right. Respondent proposed the penalty in its Final Partnership Adjustment ("FPA"). Veribest's only recourse was to petition for redetermination. *Jarkesy* held that the right attaches to the nature of the penalty, not the identity of the party who invoked the tribunal. 603 U.S. at 128-30. Second, characterizing the penalty as merely "mathematical" overlooks its punitive nature. A 40 percent penalty on a multimillion-dollar imputed underpayment is punitive in substance regardless of whether its applicability is formulaic. *See id.* at 130. The punitive nature is compounded by the application of statutorily mandated interest on the penalties. Third, the public rights doctrine does not resolve the question raised. *Jarkesy* expressly declined to hold that the public rights exception categorically permits the Government to adjudicate penalties outside Article III. *See id.* at 134-37.

### 2. 26 U.S.C. 6664(c)(3) and Adequate Disclosure is a Defense to the Gross Valuation Misstatement Penalty

Respondent argues that 26 U.S.C. 6664(c)(3) eliminates the reasonable cause defense for a gross valuation misstatement, and that this bar forecloses Veribest's penalty challenge. Resp. Br. 64. This conflates Veribest's distinct theories. Veribest's primary argument is that the Tax Court's valuation error is itself the source of the alleged gross valuation misstatement. If this Court vacates the valuation, the predicate for the penalty is eliminated. 26 U.S.C. 6664(c)(3) is irrelevant to a penalty that lacks a valid underlying determination.

Separately, Veribest's adequate disclosure argument under 26 U.S.C. 6662(d)(2)(B) is distinct from the reasonable cause defense. Veribest acknowledges that its motion to amend its pleadings in Tax Court did not specifically reference adequate disclosure. Doc. 116. But as discussed above, the theory is a legal argument supporting the position taken below. The adequate disclosure provision reduces an overstatement penalty where the taxpayer adequately disclosed the relevant facts on the return. It is not subject to the 26 U.S.C. 6664(c)(3) bar, which by its terms applies only to reasonable cause.

Veribest separately challenges whether the Treasury Regulations implementing 26 U.S.C. 6664(c)(3) survive *Loper Bright*, 144 S. Ct. 2244 (2024), but that challenge is independent.

### C. Penalty and Interest Accruals were Tolled during the COVID-19 Disaster Period

In *Abdo v. Commissioner*, the Tax Court held that 26 U.S.C. 7508A(d) "provides for an unambiguously self-executing postponement period that incorporates all of the acts referenced by section 7508A(a)." 162 T.C. 148, 165 (2024), *action on dec.*, 2026-01 (June 1, 2026). In *Kwong v. United States*, the Court of Federal Claims likewise held that the COVID–19 mandatory postponement period began on January 20, 2020, and ended on July 10, 2023, sixty days after the emergency declaration's latest incident date. 179 Fed. Cl. 382, 389 (2025), *appeal docketed*, No. 26-1843 (Fed. Cir. May 20, 2026). Because 26 U.S.C. 7508A(a)(2) covers the assessment of any "amount of interest, penalty, additional amount, or addition to tax," penalties and interest accruing during the COVID–19 disaster period should be disregarded. *See* 26 U.S.C. § 7508A(a)(2), (d).

## CONCLUSION

Veribest presented appropriate and convincing valuation evidence in the form of Mr. Kenny, an MAI (Member of the Appraisal Institute) and a certified real estate appraiser, and Mr. Dye, an active participant in the local dimension stone mining industry. The Tax Court recognized them as experts in their respective fields and received their testimony. The Tax Court's overt criticism of the valuation evidence, combined with threats of sanctions for merely advancing valuation methods required and accepted by applicable appraisal standards, IRS guidance (*i.e.,* the Conservation

Easement Audit Technique Guide), the Tax Court (*i.e., Malibu Valley Land*), and the Eleventh Circuit Court of Appeals (*i.e., Jackson Crossroads*) shows a lack of judicial objectivity and a results-driven approach.

FMV is a pivotal concept throughout the U.S. Tax Code, and determining HBU is a required step that the courts and appraisers must take to establish FMV and the tax consequences that follow. The Tax Court did not do that here. For the reasons articulated in Veribest's opening and reply briefs, this Court should reverse the Tax Court's decision, or vacate and remand with instructions to (i) make a determination of the HBU of the property applying the required standards, (ii) determine the FMV of the conservation easement based on the determined HBU, and (iii) allow Veribest the opportunity to raise the legal, non-valuation arguments outlined in Veribest's Amended Appellant Brief.

Dated: September 3, 2026 Respectfully submitted,

*/s/ Samuel H. Grier*
SAMUEL H. GRIER

*/s/ Hale E. Sheppard*
HALE E. SHEPPARD

EVERSHEDS SUTHERLAND (US) LLP
600 Peachtree Street, N.E.
Suite 5200
Atlanta, Georgia 30308
Telephone (404) 853-8000
Facsimile (404) 853-8806

COUNSEL FOR APPELLANT VERIBEST VESTA, LLC

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITATION, TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) and 11th Cir. R. 32-4 because:

> [X] this brief contains **6,496** words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f) and 11th Cir. R. 32-4,
>
> *or*
>
> [ ] this brief uses a monospaced typeface and contains [*state the number of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B) (iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> [X] this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14-point Times New Roman,
>
> *or*
>
> [ ] this brief has been prepared in a monospaced typeface using [*state name and version of word processing program*] with [*state number of characters per inch and name of type style*].

Dated: September 3, 2026

*/s/ Samuel H. Grier*
Samuel H. Grier

COUNSEL FOR APPELLANT
VERIBEST VESTA, LLC

## CERTIFICATE OF SERVICE

I hereby certify that on September 3, 2026, the foregoing **REPLY BRIEF FOR APPELLANT** was served via ECF/electronic filing upon all counsel of record.

*<u>/s/ Samuel H. Grier</u>*
Samuel H. Grier